IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| REFUGEE AND IMMIGRATION CENTER FOR EDUCATION AND LEGAL SERVICES, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | Case No. 1:24-CV-00876-RP |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, | § § § § | |
| *Defendant*. | § § | |

**DEFENDANT'S REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant United States Immigration and Customs Enforcement ("ICE") files this reply in support of its Cross-Motion for Summary Judgment (ECF No. 24).

**I.    ICE conducted an adequate search.**

ICE met its burden to establish the adequacy of its search by providing the Supplementary Declaration of Fernando Pineiro ("Suppl. Pineiro Decl."). ECF No. 24 at 16-31.[1] In 81 paragraphs, the Supplementary Declaration outlines "what records were searched, by whom, and through what process." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). It is more than reasonably detailed and non-conclusory, and therefore accorded a presumption of good faith. *Taylor Energy Co. LLC v. U.S Dep't of Interior Bureau of Ocean Energy Mgmt.*, 271 F. Supp. 3d 73, 86 (D.D.C. 2017). RAICES's bare speculation that the search should have uncovered more documents is insufficient to rebut this presumption.

---

[1] Citations to the parties' filings will be to the page numbers in the ECF header.

### A. ICE sufficiently explained the scope of its search.

RAICES claims that ICE failed to search directorates likely to contain responsive records. ECF No. 26 at 5. Its argument, though unclear, appears to be that ICE narrowly focused on ERO to the exclusion of any other directorates. In advancing this argument, RAICES focuses on one sentence of the Supplementary Declaration in isolation without considering its context. ECF No. 26 at 5. It also ignores the fact that an additional ERO search was conducted, as well as a search of both OPLA and OPR.

The Supplementary Declaration explains ERO was identified as a directorate with potentially responsive documents due to the subject matter of RAICES's FOIA request. Suppl. Pineiro Decl. ¶ 34. It goes on to explain why: ERO is responsible for arrest and removal of aliens, managing ICE detention operations, and providing medical and mental health care to persons in ICE custody. *Id.* ¶ 35. ERO also manages all logistical aspects of the removal process. *Id.* ¶ 36. RAICES's FOIA request, concerning Ms. Portillo Moreno's detention in ICE custody, fits squarely within the sphere of ERO's operations. During the conferral period, ICE conducted an additional ERO search, as well as searches of both OPLA and OPR. Suppl. Pineiro Decl. ¶¶ 40-45. RAICES provides no evidence casting doubt on the reasonableness of the scope of ICE's search.

### B. Documents received in response to other FOIA requests do not cast doubt on the reasonableness of ICE's search in this case.

RAICES points to documents it has received in response to other FOIA requests to argue that ICE's search should have uncovered the same documents in response to the FOIA request in this case. ECF No. 26 at 6-7. RAICES focuses on the *results* of the search rather than the methodology behind the search. But that is not how the adequacy of a search is measured. The adequacy of a search is "determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild v. Dep't of State*, 641

F.3d 504, 514 (D.C. Cir. 2011). RAICES's results-oriented approach, therefore, misses the mark.

RAICES claims it received certain documents from OPLA in response to a separate FOIA request it sent to ICE in November 2024. ECF No. 26 at 6. This, according to RAICES, casts doubt on ICE's assertion that OPLA had no documents responsive to the FOIA request at issue in this case. *Id.* RAICES also points to documents it received in response to a FOIA request to USCIS to suggest that ICE must have documents responsive to RAICES's request in this case. *Id.* at 6-7. It is hardly surprising that different FOIA requests with different searches would yield different sets of responsive documents. Regardless, even assuming RAICES could establish that ICE missed isolated documents in its search, a "reasonable and thorough search" may still miss records. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Agencies are not required "to examine virtually every document in [their] files or "follow[] an interminable trail of cross-referenced documents." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). Since RAICES has challenged only the results of ICE's search and not its process, RAICES cannot demonstrate that ICE's search was inadequate.[2]

### C. RAICES's remaining complaints do not cast doubt on ICE's search.

RAICES claims ICE should have produced Ms. Portillo Moreno's A-file, but omits the fact that ICE specifically directed RAICES to USCIS for Ms. Portillo Moreno's A-file. Suppl. Pineiro Decl. ¶ 7. RAICES also ignores its own instructions to ICE in its FOIA request to not forward its

---

[2] RAICES's additional arguments contained in this section of its response are immaterial to the question of search adequacy. ECF No. 26 at 7. Even assuming the supplementary declaration misstated the date on which a subset of documents was sent to Plaintiffs, that does not touch on the adequacy of the search. Nor does a discrepancy in redactions between documents produced in this case and documents produced in response to a separate FOIA request. Nevertheless, upon further review, ICE has determined it mistakenly applied b(6) and b(7)(E) redactions to the words "Temporary Protected Status" in the document highlighted by RAICES, and it can reprocess the document RAICES identifies as its Exhibit 15 to remove those redactions.

request to other agencies (specifically mentioning USCIS), as RAICES had already sent a separate FOIA request to USCIS. ECF No. 17-2 at 4. RAICES implies that ICE should also be a custodian of Plaintiff's A-file without any supporting evidence. Additionally, RAICES attempts to cast doubt on ICE's search due to the lack of email correspondence it received in response to their FOIA request. This, however, is a purely speculative claim about the existence of other documents that cannot rebut the presumption of good faith accorded to the Supplementary Declaration. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Since RAICES has failed to rebut the presumption of good faith accorded to the Supplementary Declaration, the Court should grant summary judgment in favor of ICE on the adequacy of its search.

**II.     ICE sufficiently justified its redactions and withholdings.**

ICE also sufficiently justified its redactions and withholdings in its *Vaughn* index. To the extent any minor discrepancies exist between the Supplementary Declaration and *Vaughn* index, they can be easily remedied by the production an amended *Vaughn* index.

**A.     ICE correctly applied Exemption 5.**

RAICES challenges ICE's application of Exemption 5 based on two documents: a Document Routing Form and a San Antonio Case Review Worksheet. ECF No. 26 at 10. As explained in the Supplementary Declaration and *Vaughn* index, ICE made partial redactions to these documents under Exemption 5 to protect deliberative decision-making. Suppl. Pineiro Decl. ¶ 53-36; ECF No. 24 at 37-39. According to the *Vaughn* index, the redacted information contains recommendations regarding Ms. Portillo Moreno's request for a stay of removal and her removability as a general matter. ECF No. 24 at 37-39.

RAICES argues that ICE improperly applied Exemption 5 because RAICES received the same documents, unredacted this time, in response to a separate FOIA request to ICE. ECF No.

4

26 at 10. RAICES appears to have received the same two documents (in response to a different request) with no redactions under Exemption 5, while Exemption 5 redactions were applied to the documents produced in response to the request in this case. *Compare* P's Ex. 15 *with* 19; and 17 *with* 18. This inconsistency, however, does not impact the propriety of ICE's claimed exemptions. A review of the unredacted information produced in response to the separate FOIA request confirms that the information includes pre-decisional, deliberative communications. *See* P's Exs. 18, 19. That ICE did not (perhaps erroneously) make Exemption 5 redactions to the same documents in a separate production does not mean that ICE improperly redacted the information the first time. In fact, RAICES makes no claim that the information redacted was not deliberative and/or pre-decisional. Since the inconsistency RAICES raises does not impact the propriety of ICE's Exemption 5 redactions—and because RAICES makes no other challenges related to Exemption 5—the Court should grant summary judgment in favor of ICE as to its claimed exemptions under Exemption 5.

      **B.**      **ICE correctly applied Exemption 7(E).**

RAICES attacks ICE's claimed 7(E) exemptions, arguing that ICE's descriptions and rationale in the *Vaughn* index are inadequate. ECF No. 26 at 11. In so doing, however, RAICES fails to read the *Vaughn* index in conjunction with the Supplementary Declaration. Together, those documents provide an adequate explanation and rationale for ICE's claimed 7(E) exemptions.

Exemption (7)(E) protects from disclosure documents that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). RAICES claims that virtually all of ICE's 7(E) claimed exemptions are justified merely as "sensitive law enforcement information." ECF No. 26 at 11. That is not entirely accurate. Although the *Vaughn*

index lists this rationale under the "Redacted Information" paragraph of each entry, it explains its basis for withholding in greater detail in the "Reason(s) for Redactions" paragraph. ECF No. 24 at 48, 51, 52. As explained in the *Vaughn* index and the Supplementary Declaration, ICE applied Exemption 7(E) to sensitive law enforcement information, such as internal codes, file numbers, and case numbers. Suppl. Pineiro Decl. ¶ 71. ICE explained that exposing internal codes, file numbers, and case numbers would reveal methods ICE uses to conduct removal operations and could enable someone to cause disruptions to ICE's operations. *Id.* ¶ 74. ICE also applied Exemption 7(E) to internal ICE documents such as classification worksheets and scoring tools. *Id.* ¶ 71. ICE further explained that revealing classification worksheets and scoring tools could enable bad actors to discover the methods ICE uses to conduct removal operations and potentially be able to interfere with or evade removal. *Id.* ¶ 73. Reading both the Supplementary Declaration and *Vaughn* index together makes clear that ICE did not justify its 7(E) merely by stating the information was "sensitive law enforcement information." *See Nat'l Sec. Couns. v. C.I.A.*, 960 F. Supp.2d 101, 166 (D.D.C. 2013) (explaining that the declaration and *Vaughn* index should be read together and not in isolation from each other).

RAICES also faults ICE for using the same description for withholding under Exemption 7(E) for "almost every" entry. ECF No. 26 at 11. Again, this is not entirely accurate. The *Vaughn* index lists at least three rationales for withholding under Exemption 7(E). One corresponds to internal codes, file numbers, and case numbers. *See, e.g.*, ECF No. 24 at 50. Another explains information withheld from a classification worksheet. *See, e.g., id.* at 51. Yet another explains information withheld from a scoring tool to determine level of risk. *See, e.g., id*. at 54. While the same or similar rationale is applied to multiple documents, that is because the basis for withholding is the same. ICE cannot be faulted for the fact that the documents at issue involve similar grounds

for withholding, "thus leading to exhaustive repetition" within its *Vaughn* index. *See Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001).

RAICES's remaining complaints about ICE's claimed 7(E) exemptions are either purely speculative or easily curable. For example, RAICES speculates that certain 7(E) exemptions "appear" to have been applied to Ms. Portillo Moreno's personal information, but they do not support that claim with any evidence. ECF No. 26 at 11-12. Similarly, RAICES criticizes the rationale for withholding information from the classification worksheets because "it is impossible to imagine how disclosure of ICE's method of classifying a person *already in custody* could possibly allow anyone else to actually 'avoid detection' and escape custody to begin with." *Id.* at 12-13 (emphasis in original). This is not a complete representation of ICE's basis for withholding. ICE goes on to explain in the same paragraph in its *Vaughn* index that public disclosure of the information could allow bad actors (presumably not yet in custody) to anticipate law enforcement actions and modify their behavior to avoid apprehension. The information was not withheld, as RAICES appears to suggest, to prevent those in custody from escaping custody.

RAICES does identify an apparent error in the *Vaughn* index where a particular rationale is not matched to the correct document. The *Vaughn* index states that a classification worksheet was redacted for internal codes and file numbers (ECF No. 26 at 52-53), where it should have instead stated that it was redacted for law enforcement techniques and procedures, just like the classification worksheet two entries above (ECF No. 26 at 51). ICE can produce and amended *Vaughn* index to correct this error. This minor error does not render ICE's justifications less logical or plausible. *Wolf v. C.I.A.*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

    **C.**    **ICE correctly applied Exemptions 6 and 7(C).**

RAICES claims ICE incorrectly applied Exemptions 6 and 7(C) because it redacted

information that it had not previously redacted in a separate production to RAICES in 2020. ECF No. 26 at 13. RAICES does not otherwise contest the propriety of the redactions. Again, simply because certain information was not redacted in one context does not necessarily mean redactions in another context and under different circumstances are incorrect or unjustified. RAICES also complains that ICE should not have redacted certain personal information because of a privacy waiver sent to DHS that had been submitted on behalf of Ms. Portillo Moreno's mother. ECF No. 26 at 13. It is unclear how a privacy waiver to DHS for Ms. Portillo Moreno's mother would affect the obligations ICE has with respect to this specific request from RAICES to ICE. RAICES has pointed to no authority indicating that such a waiver, not submitted in the context of this case, compels ICE to *not* make b(6) and b(7)(C) redactions in this case.

Finally, RAICES questions whether there truly could be "alien booking record(s) for a third-party" in this production, speculating that it would not have been flagged as responsive if the information did not relate to Ms. Portillo Moreno. ECF No. 26 at 14. RAICES fails to consider the context in which these redactions appear—Ms. Portillo's grievances or "papelitos" about certain individuals. Redaction of that third-party information is appropriate.

### D. There is no evidence of de facto withholding.

ICE does not understand what RAICES means by "de facto withholdings." RAICES claims relevant information in certain records produced by ICE is cut off, but it does not explain what relevant information they could be seeking and how they know relevant information is missing. ECF No.26 at 14. Again, this is further speculation that does not cast doubt on ICE's claimed exemptions.

In sum, RAICES has not presented sufficient evidence to rebut the good faith presumption accorded to ICE's Supplementary Declaration and *Vaughn* index. At best, RAICES has identified

minor, isolated, and fixable errors within the *Vaughn* index, and one instance of mistaken redaction. ICE will reprocess the document mistakenly redacted and submit an amended *Vaughn* index to RAICES. ICE respectfully requests that its motion for summary judgment be granted and that RAICES's motion for summary judgment be denied.

Dated: April 21, 2025                          Respectfully submitted,

**Margaret F. Leachman**
Acting United States Attorney

By:    */s/ Landon A. Wade*
**Landon A. Wade**
Assistant United States Attorney
State Bar No. 24098560
U.S. Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
(512) 370-1255 (phone)
(512) 916-5854 (fax)
landon.wade@usdoj.gov

***Attorney for Defendant***

# CERTIFICATE OF SERVICE

I certify that on April 21, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system,

*/s/Landon A. Wade*
Landon A. Wade
Assistant United States Attorney